(C. D. 712)

CAMILLA LUCAS *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 11, 1942)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, and *James F. Donnelly*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty collected on certain etchings which were assessed at 25 per centum ad valorem under paragraph 1410 of the Tariff Act of 1930. The plaintiff claims that the merchandise is dutiable at 20 per centum ad valorem under paragraph 1547 (a) (3) or paragraph 1547 (a) (1), or at 15 per centum ad valorem under paragraph 1547 (a) as amended by the trade agreement with the United Kingdom (T. D. 49753). The pertinent parts of the paragraphs involved read as follows:

PAR. 1410. * * *; blank books, slate books, drawings, engravings, photographs, etchings, maps, and charts, 25 per centum ad valorem; * * *

. PAR. 1547. (a) Works of art, including (1) paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same, * * * (3) etchings and engravings, all the foregoing, not specially provided for, 20 per centum ad valorem.

PAR. 1547. (a) (Trade agreement with the United Kingdom, T. D. 49753) Paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same, all the foregoing which are works of art, not specially provided for, 15% ad val.

The plaintiff called Mr. Sidney Z. Lucas as a witness. He testified that he is the manager of the importing firm and had been so employed for 6 years; that the business of the firm is publishing and importing French etchings and that he made the purchases of the articles herein involved; that he went to the studios of the artists Francois, Paul Wood, Barnaix, and Lecomte and examined paintings which the artists had on exhibition; that he selected certain ones and made contracts with the artists to produce etching plates embodying the details of those paintings; that he also saw two paintings in possession of a son of the artist Jourdain, who had died, and that he purchased the privilege of making etchings embodying the details thereof; that he took those two paintings to an artist plate maker and had plates made for reproducing them in etchings; that he took all of the plates which were produced to a studio and had all of the etchings herein involved printed therefrom; that the artists themselves supervised the printing of the first few hundred copies to insure that the proper colors were used, after which the printer, who is also an artist, completed the remainder; that the printing was done on a press driven by electricity which is a new method of printing etchings but is the same process formerly used when a hand driven press was employed.

A sample of each of the etchings was introduced in evidence and they were marked collective exhibits 1 to 8. The witness also produced some of the originals but they were withdrawn at the close of the trial.

The witness testified also that all of the artists who conceived and produced the original paintings were professional artists of high stand-

ing; that in making the plates they used the usual etching needles, wax, acid and copper plates which are used to make etching plates; that the only difference between the etchings in this case and other etchings is that these were printed on a power-driven press while others are printed on a hand-driven press. The witness testified also that, although he had never attended art school, he had made a study of art for many years and, besides having a substantial art library which he studies, he had visited the most famous art museums in Europe and many in America and studied the exhibits there; that he is responsible for creating more French etchings than any other man in the world; and that in his opinion the etchings covered by the exhibits in this case are works of art.

On cross-examination the witness testified that the only instruction he gave the artists who produced the plates was as to the size of the plates desired; that all etching plates today are faced with steel, because if an etching plate is not faced with steel it gets damaged, and 20,000 etchings may be printed from one plate, unless a plate breaks; that etching plates used on a hand press are also faced with steel and artists who make the etching plates do not steel face the plates.

We are of opinion that the evidence in this case establishes that the etchings herein involved are works of art. The defendant urges that because the articles were printed by a mechanical process they can not be considered as works of art, but according to the record in this case all etchings are printed on a press and if such mechanical work should deprive etchings from classification as works of art there would be no etchings within the provisions of paragraph 1547 (a) and the provision for etchings therein would therefore be a nullity. In the case of *Amedeo G. Paternostro* v. *United States*, 6 U. S. Cust. Ct. 291, C. D. 486, paintings, which were produced in part by a stenciling process and in part by pen and ink or by a brush and paint, were held to be works of art and dutiable at 15 per centum ad valorem under paragraph 1547 (a) of the Tariff Act of 1930, as amended by the trade agreement with the United Kingdom.

In *Hussa & Co.* v. *United States*, 9 Treas. Dec. 679, T. D. 26282, G. A. 6012, cited by the defendant, the court held that certain "painter" etchings were free of duty as "works of art, the production of American artists residing temporarily abroad" under paragraph 703 of the Tariff Act of 1897, rather than dutiable at 25 per centum ad valorem under paragraph 403 which contained provisions for "photographs, etchings, maps, charts * * *" which is the predecessor of the provision in paragraph 1410 in the act of 1930, above quoted. The Tariff Act of 1897 contained no specific provisions for etchings which were works of art such as are contained in paragraphs 1547 (a) and 1807 of the Tariff Act of 1930 and the statements of the Board of United States General Appraisers in that decision as to the construc-

tion to be adopted under that act are not applicable to the present case.

The trade agreement with the United Kingdom reduces the duty to 15 per centum ad valorem on the merchandise described in paragraph 1547 (a) (1) only, and the only question involved with respect to the application of the terms of the trade agreement is whether or not the etchings are copies, replicas, or reproductions of paintings. But, even though it were conceded that the etchings were reproductions of paintings, they would be more specifically provided for as "works of art, including * * * etchings" under paragraph 1547 (a) (3) than as copies, replicas, or reproductions of paintings. The claim under the trade agreement is therefore overruled.

The question remaining for decision is whether or not the articles are dutiable under paragraph 1410 as etchings or under paragraph 1547 (a) (3) as etchings which are works of art. Etchings are provided for in paragraph 1410 along with blank books, slate books, maps, and charts, but we are of opinion that etchings which are works of art were intended by Congress to be dutiable under paragraph 1547 (a) (3), because they are more particularly provided for in that paragraph, and that the provision for etchings in paragraph 1410 relates to those which are not works of art. Accordingly, we hold that the etchings herein involved are dutiable at 20 per centum ad valorem under paragraph 1547 (a) (3) of the Tariff Act of 1930 and that claim in the protest is sustained. To that extent, judgment will be entered in favor of the plaintiff.